FILED
2005 Sep-16  PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ROBERT F. MORGAN, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **CIVIL ACTION NO.** |
| ) | **CV-03-2412-VEH** |
| v. ) | |
| ) | |
| JEFFERSON COUNTY ) | |
| COMMISSION, et al., ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION</u>

Robert F. Morgan and Michael D. Wilson have sued Defendants Mike Hale
(individually and in his official capacity as Sheriff of Jefferson County), the Jefferson
County Commission, and the Jefferson County Personnel Board under the Fair Labor
Standards Act (FLSA) and 42 U.S.C. § 1983 for failure to pay overtime for hours
worked in excess of 40 hours per week.  Prior to this motion for summary judgment,
all claims against Mike Hale were dismissed with prejudice, and all claims against the
Jefferson County Commission with the exception of a claim under the FLSA were
dismissed with prejudice.  Defendant Jefferson County Commission has filed a
motion for summary judgment on the remaining FLSA claim.  The parties have
briefed the issue extensively.

For the reasons stated, Defendant's motion for summary judgment is due to be **GRANTED**.

## Facts[1]

Plaintiff Robert F. Morgan began working with the Jefferson County Sheriff's Department on January 19, 1987 as a Deputy Sheriff, and he was a K-9 handler from 1997 until his retirement on June 14, 2003. Plaintiff Michael D. Wilson worked with the Jefferson County Sheriff's Department from August 1992 until approximately April 2001. At all times relevant to this lawsuit, Morgan and Wilson were employed as K-9 officers for the Jefferson County Sheriff's Department (Plaintiff 2d Am. & Restated Compl. p.2 at 5-6).

Morgan and Wilson kept the police dogs in a kennel at their homes (Deposition of Michael Wilson, p.7 lines 8-21; Deposition of Robert Morgan, p.40 lines 6-13)[2], brushed the dogs each morning (Deposition of Robert Morgan, p.39 lines 13-21), and groomed, fed, watered, and exercised the dogs as well as cleaned the kennels each afternoon (*Id.*, p.39 line 22 - p.40 line 5). In addition to these duties, Morgan and Wilson were required to obtain food, flea and tick spray, heartworm preventatives,

---

[1]Where disputed, as it must, the court has viewed the facts in the light most favorable to Morgan and Wilson. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000)

[2]Wilson stipulated the answers given by Morgan in Morgan's deposition are true and correct to the best of his knowledge and adopted and incorporated those questions and answers as his answers when he was deposed. Further references to the Plaintiffs' depositions will only reference the deposition of Morgan to the extent that Wilson has adopted Morgan's responses.

to bathe the dogs once a week, take the dogs to the veterinarian as needed, and perform other miscellaneous duties (Plaintiff 2d Am. & Restated Compl. p.2 at 7).

The Sheriff promulgated the policy, which contained specific requirements, instructing Morgan and Wilson to care for their dogs (Deposition of Robert Morgan, p.37 line 23 - p.38 line 23, p.40 lines 14-21). All of Morgan's and Wilson's duties in regard to handling the dogs occurred at the end of their regular shift (Plaintiff 2d Am. & Restated Compl. p.2 at 8); however, they argue that, in violation of the Fair Labor Standards Act (FLSA)(*Id.* p.2 at 8-11), the Jefferson County Commission improperly refused to pay them overtime for an average of 1 hour per day, 365 days per year, spent in the care of their police dogs.

## Standard of Review for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has

3

met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not

4

controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence

sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## Analysis

### I.   The Jefferson County Commission is not Morgan's and Wilson's Joint Employer Under the FLSA.

Under the FLSA, an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). The FLSA requires that only an employer is liable for paying overtime wages. 29 U.S.C. § 207(a). An employee can have more than one employer simultaneously, thereby giving rise to a joint-employer situation. *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996). "The determination of employment status under the FLSA is a question of law." *Brouwer v. Metropolitan Dade County*, 139 F.3d 817, 818 (11th Cir. 1998).

The proper test to apply to determine whether the Jefferson County Commission is the joint employer of Morgan and Wilson under the FLSA is the "total employment situation" test of *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995). The Jefferson County Commission is not Morgan's and Wilson's joint employer

under the *Welch* test.

The plaintiff in *Welch* was a female dispatcher for the Cullman County Sheriff's Department. She reported directly to Cullman County Sheriff David Laney. After discovering that a male dispatcher in the Sheriff's Department was receiving a higher salary, she sued, among other parties, Sheriff Laney, in both his official and individual capacities, for a violation of the Equal Pay Act. See *Welch,* 57 F.3d at 1007. The Equal Pay Act is simply an extension of the FLSA and incorporates the FLSA's definition of "employer." *See Corning Glass Works v. Brennan,* 417 U.S. 188, 190, 94 S.Ct. 2223, 2226, 41 L.Ed.2d 1 (1974) (noting that the Equal Pay Act of 1963, 77 Stat. 56, § 3, merely "added to § 6 of the Fair Labor Standards Act of 1938 the principle of equal pay for equal work regardless of sex").

In analyzing Welch's claims under the Equal Pay Act, the Court articulated a three factor test in order to determine whether or not the County Commissioners named in the suit were Welch's joint employers by the "total employment situation" standard. The factors used in assessing the total employment situation are (1) whether the employment took place on the premises of the alleged employer; (2) how much control the alleged employer exerted on the employees; and (3) whether the employer had the power to hire, fire or modify the employment conditions of the employee. *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995).

The 11th Circuit held that:

> Applying these factors, the commissioners do not qualify as Welch's employer under the Act. Welch's employment took place on Sheriff Laney's premises, the Cullman County Sheriff's Department, not on any premises of the commissioners. The commissioners exercised no direct control over Welch, except for setting the salary for the employment classification which Welch fit into, and had no power to hire or fire her.

*Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995).

### A.   Morgan's and Wilson's employment did not take place on premises controlled by Jefferson County.

The parties agree that the Jefferson County Commission owns property that is used and occupied by the Sheriff of Jefferson County.  In contrast, the County Commission claims that the providing of premises to the Sheriff's Department is irrelevant under a *Welch* analysis because Morgan and Wilson took care of their police dogs at their homes and not on County Commission property.  The County Commission is asking the court to draw a distinction between the physical location where Morgan and Wilson performed the alleged overtime work duties and where they performed their non-overtime work duties in the hope that the court will reach the conclusion that the alleged overtime hours were not worked on property owned by the County Commission and that, as a result, Morgan and Wilson cannot meet the first prong of the *Welch* test.  This is not a viable interpretation.

The plain language of *Welch* indicates that a court is to examine whether or not the <u>employment</u> took place on the premises of the employer, not whether or

not overtime <u>duties</u> were performed on or off the premises of the employer.  The County Commission cannot point to any law that suggests their interpretation is the correct one to follow and the evidence shows that the County Commission provides premises for the Sheriff's Department where Morgan and Wilson were employed as Deputy Sheriffs.

However, the evidence would have to show that the Jefferson County Commission exerted "meaningful direct control over the worksite itself" in order for Morgan and Wilson to prevail under the first prong of a *Welch* analysis, as *Welch* does not require merely a minimum fee simple ownership of the worksite in order for a court to conclude that employment took place on the premises of the employer.  *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255 (11th Cir. 2004).  Even a leasehold interest alone does not give rise to satisfaction under the first prong in *Welch* absent an element of direct control over the premises.  *Id.* at 1255.  As there is nothing in evidence to suggest that any entity other than the Jefferson County Sheriff's Department had control over the premises provided to the Sheriff by the Jefferson County Commission, Morgan and Wilson cannot succeed under the first prong of the *Welch* test.

**B.     The Jefferson County Commission had no control over Morgan and Wilson.**

The *Welch* test demands that a court examine how much control the alleged

employer exerted over the employees.  In the present instance, the evidence shows that the Jefferson County Commission did not exert any direct or indirect control over Morgan and Wilson.

The Sheriff of Jefferson County promulgates the Sheriff's Department rules and regulations (Deposition of Robert Morgan, p.14 line 17 - p.15 line 2) and is responsible for the establishment and implementation of policies and procedures governing the operation of the Sheriff and his deputies (Affidavit of Larry Langford, President of the Jefferson County Commission).  Morgan's and Wilson's chain of command was Sergeant, Lieutenant, Chief Deputy, Sheriff (Deposition of Robert Morgan, p.8 line 10 - p.9 line 11).  Morgan's and Wilson's duty assignments for day to day operation were determined by the Chief Deputy and disseminated to the them by the Sergeants (*Id.* p.10 line 19 - p.12 line 9, p.13 lines 16-21).  Morgan's and Wilson's chain of command gave authorization for them to work overtime (*Id.* p.23 lines 6-18).  In order to get paid for overtime hours, deputies would fill out an overtime card which would ascend the chain of command, finally resting with the Sheriff's payroll clerk (*Id.* p.19 line 7 - p.20 line 17); however, all funding for the Sheriff's Department, including funds used to pay overtime and payroll expenses, ultimately are provided by the Jefferson County Commission (Deposition of Larry Langford, p.20 lines 20-21, p.34 line 16 - p.35 line 5).

10

Deputy Sheriffs in Jefferson County receive their performance evaluations from Sergeants (Deposition of Robert Morgan, p.9 lines 12-17) and Morgan and Wilson never received a performance evaluation from a Jefferson County Commissioner during the course of their employment with the Jefferson County Sheriff's Department (*Id.* p.30 lines 12-16).  Morgan's and Wilson's personnel files are maintained at and by the Sheriff's Department (*Id.* p.15 line 17 - p.16 line 5).

The Jefferson County Commission does not control or direct the day to day activities of the Sheriff or his deputies and has no authority to set the hours of work or assign duties or responsibilities for employees of the Sheriff (Affidavit of Larry Langford).  Morgan and Wilson admit that they were never given a daily assignment from a County Commissioner (Deposition of Robert Morgan, p.30 line 23 - p.31 line 7).  The Jefferson County Commission only provides funds to the Sheriff, which the Sheriff uses and applies as he determines is appropriate (Affidavit of Larry Langford). The Personnel Board, not the County Commission, sets Morgan's and Wilson's pay scale (Deposition of Robert Morgan, p.23 line 19 - p.24 line 1).  Morgan and Wilson were not hired by a County Commissioner (*Id.* p.30 lines 17-19) and the Sheriff made the final decision to put them in the K-9 Corps (*Id.* p.36 line 21 - p.37 line 19).

Larry Langford is the President of the Jefferson County Commission and is

knowledgeable about the County and its workings (Deposition of Larry Langford, p.6 lines 21-23, p.7 lines 9-12).  Langford, in an affidavit subsequent to his deposition, asserts that:

> Neither the Jefferson County Commission nor any individual commissioner has the authority to control or direct the day to day activities of the Jefferson County Sheriff or his deputies.  The Sheriff of Jefferson County is a Constitutional officer of the state of Alabama and is responsible for the establishment and implementation of policies and procedures governing the operation of the Jefferson County Sheriff and his deputies.  All employees of the Sheriff are hired, administered and terminated by the Sheriff.  The Jefferson County Commission has no authority to hire, set hours of work, assign duties or responsibilities, etc. for any employee of the Sheriff.  The Jefferson County Commission only provides funds to the Sheriff of Jefferson County which the Sheriff uses and applies as he determines is appropriate.

Affidavit of Larry Langford.

Each of these preceding factors establish that it was the Sheriff of Jefferson County and not the Jefferson County Commission who exercised direct control over Morgan and Wilson.

Morgan and Wilson argue that the County Commission had direct control over them in their capacity as Deputy Sheriffs because the County Commission signed their paychecks, provided benefits and insurance to them, reviewed the budget for the Sheriff's Department prior to awarding operating funds, and because the County Commission distributed to Sheriff's Department employees a personnel handbook containing rules and standards.  None of these arguments,

either individually or collectively, or the evidence presented in support of these arguments, lead the court to the conclusion that the Jefferson County Commission exercised control over Morgan and Wilson under a *Welch* analysis.

It is undisputed that Morgan and Wilson are only suing the County Commission because the County signed their paychecks (Deposition of Robert Morgan, p.46 lines 7-16). The 11th Circuit addressed the issue of whether or not the cutting of a County paycheck to Sheriff's Department employees and the setting of the wage scale equates to control over those employees by County Commissioners and concluded that it did not. *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995). In *Welch*, the County Commission both issued the paychecks and controlled the wage scale for Sheriff's Department employees. In the present case, the County Commission only signs the checks. The evidence clearly establishes that the Jefferson County Personnel Board controls the wage scale for Sheriff's Department employees. Simply issuing the paychecks to Deputy Sheriffs in Jefferson County does not amount to the Jefferson County Commission's having control over Morgan and Wilson.

In addressing Morgan's and Wilson's other arguments, the 11th Circuit provides direction. In *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253 (11th Cir. 2004), the Plaintiff in that action alleged that Defendant RDV was his joint

13

employer for purposes of a Family Medical Leave Act claim.[3]  RDV moved for
Summary Judgment, the District Court granted the motion, and Morrison
appealed.  On appeal, the 11th Circuit subjected Morrison's claim to the *Welch* test
and concluded that Morrison failed under all three factors.  In analyzing the
second factor

> [T]he fact that it [RDV] gave him various gifts and perquisites-including a
> holiday bonus, a discount at the Magic's FanAttic store, season tickets to
> Magic Games, invitations to RDV's summer picnic and Christmas party, and
> an invitation to volunteer at an Orlando Magic event-does not mean that it
> had control over him in any way. While, in the abstract, these facts are
> consistent with the existence of an employment relationship, and could be
> construed as even suggesting one in our everyday conception of the word,
> they do not show that RDV had control over him for purposes of the *Welch*
> test.

*Morrison v. Magic Carpet Aviation* 383 F.3d 1253, 1256 (11th Cir. 2004).

In addition, the facts that Morrison was "required to wear an RDV
identification badge, that he was required to attend an employee orientation at
RDV, and that he was listed in RDV's staff directory as an employee ... do not
easily fall within the *Welch* framework."  *Morrison v. Magic Carpet Aviation* 383
F.3d 1253, 1257 (11th Cir. 2004).

The decision in *Morrison* states that the evidence must exhibit that an
alleged joint employer had direct control over the employee in order to withstand

---

[3]The 11th Circuit held that the definition of "employer" found in the FLSA and the FMLA
are identical and should be analyzed under the test articulated in *Welch v. Laney*, 57 F.3d 1004,
1011 (11th Cir. 1995).  See *Wascura v. Caldwell*, 169 F.3d 683, 685 (11th Cir. 1999).

scrutiny under *Welch* at the summary judgment stage. *Id.* at 1256.  No argument or evidence offered by Morgan and Wilson meets this standard.  The offering of optional benefits and insurance by the Jefferson County Commission to Sheriff's Department employees does not give rise to the Commission's having direct control over those employees.  The County Commission has control over reviewing and cutting the Sheriff's proposed budget prior to awarding operating funds, but because the Commission has no control over those funds once they are disbursed to the Sheriff, the County Commission has no direct control over Sheriff's Department employees.  Based on the evidence, the line item in the Sheriff's proposed budget for overtime expenses is suggestive rather than binding on the Sheriff's Department.  Finally, the distribution of a Personnel Handbook to Morgan and Wilson by the County Commission does not rise to the level of the County Commission's having direct control over them.[4]  There is no means apparent in evidence for the County Commission to discipline Sheriff's Department employees for violating those rules; thus, they have no control over the employees.  By the evidence, only the Sheriff of Jefferson County, and not the Jefferson County Commission, has direct control over the deputies in his employ.

---

[4]It is unclear by the evidence as to who, between the Jefferson County Commission and the Jefferson County Personnel Board, distributes the Personnel Handbook.  At different times, Morgan and Wilson assert that one or the other of these separate entities distributes this handbook. For the purpose of this analysis only, the court assumes that the Jefferson County Commission distributed the Personnel Handbook to Morgan and Wilson.

**C.    Morgan and Wilson could not be hired, fired, or have the conditions of their employment modified by the Jefferson County Commission.**

Morgan and Wilson do not put forth any evidence that could be found to vest the Jefferson County Commission with the authority to hire, fire, or modify the employment conditions of Jefferson County Deputy Sheriffs.

Under the Jefferson County Personnel Board Rules and Regulations, an "appointing authority" is

> Any person, officer, board, council, commission or other governmental body whose lawful jurisdiction or powers are confined wholly or primarily within the territorial limits of Jefferson County and who or which possesses final power to appoint persons to services, jobs, offices or positions, the compensation of which is paid in whole or in part from the public funds of Jefferson County or from the public funds of a municipality in Jefferson County Subject to this Act

Rule 1.3, Personnel Board of Jefferson County.

By mutual agreement of the parties, Michael Hale, Sheriff of Jefferson County, and not the Jefferson County Commission, is the appointing authority for his deputies (Defendant Jefferson County's Brief in Support of Mot. for Summary Judgment p.3 at 8; Plaintiffs' Opposition to Defendant Jefferson County's Mot. For Summary Judgment p.2 at 8); however, Morgan and Wilson assert that "appointing authority" and "employer" as defined under the FLSA are not one and the same (Affidavit of Robert Morgan at 3).  While the court agrees that there is a difference between "appointing authority" and "employer" under the FLSA, there

is nothing in evidence to suggest that anyone other than the Sheriff of Jefferson

County is the sole official in Jefferson County with the power to hire Deputy

Sheriffs.

Morgan and Wilson have presented no evidence that the Jefferson County

Commission jointly holds the power with the Sheriff of Jefferson County to fire

Deputy Sheriffs.  The evidence would have to show that the Jefferson County

Commission had the power to directly fire Morgan and Wilson without the

consultation or approval of the Jefferson County Sheriff.  *Morrison v. Magic*

*Carpet Aviation* 383 F.3d 1253, 1255 (11th Cir. 2004).  Any disciplinary action

against Morgan and Wilson would be initiated by their immediate supervisor in

the Sheriff's Department and flow up the chain of command to the Sheriff of

Jefferson County (Deposition of Robert Morgan, p.14 lines 1-16).  The Sheriff

holds the authority to fire deputies (*Id.* p.15 lines 4-16).[5]

Finally, Morgan and Wilson have presented no evidence that leads this

---

[5]Morgan and Wilson dispute that the chain of command for disciplinary matters and that the authority for the firing of deputies ends with the Sheriff of Jefferson County.  In support of their position, the Plaintiffs rely on the deposition of County Commissioner Larry Langford in which Langford states that the County Commission must hear all county employee disciplinary matters by law (Deposition of Larry Langford, p.31 lines 1-7).  However, in this same deposition and during the same line of questioning, Langford carves out an exception between the Jefferson County Sheriff's Department and other Jefferson County entities, and claims that the Commission has no power over the Sheriff's Department at all (*Id.* p.28 line 12 - p.29 line 3)(Langford maintains throughout the deposition that the Sheriff's Department is a State entity that is funded by the County under Alabama law).  Morgan and Wilson provide no other evidence to show that the Jefferson County Commission has the authority to fire employees of the Sheriff of Jefferson County.

court to conclude that the Jefferson County Commission has the power to modify

their employment conditions.

Morgan and Wilson present no evidence that leads the court to conclude

that the third factor of *Welch* is satisfied.  The Jefferson County Commission is not

the joint employer of Morgan and Wilson for purposes of an FLSA claim.

**II.**   **Morgan's and Wilson's additional arguments in opposition to summary judgment**.

     **A.**   **A ruling by the court, on a motion to dismiss, that Morgan's and Wilson's complaint successfully alleged that the Jefferson County Commission was their joint employer under the FLSA does not prevent the court from reaching a different conclusion on a motion for summary judgment.**

Morgan and Wilson argue that the Jefferson County Commission's motion

for summary judgment is substantially identical to the Commission's previous

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in which the

motion to dismiss the FLSA claim against the Commission was denied (doc. 36).

On this basis, Morgan and Wilson assert that the motion for summary judgment is

also due to be denied as the court previously ruled that the Jefferson County

Commission is Morgan's and Wilson's joint employer for purposes of the FLSA

(docs. 41, 42), and that granting summary judgment on the grounds that the

Commission is not Morgan's and Wilson's employer would be in conflict with a

previous determination made by this court.  The court is not persuaded by this

argument.

The standard of review the court employs when scrutinizing a motion to dismiss under Rule 12(b)(6) is different than the standard of review for a motion for summary judgment.[6]

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is due to be granted only when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct 99, 2 L.Ed.2d 80 (1957). And, when making that determination, the court must view the allegations contained in the complaint in the light most favorable to the nonmovant. *Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir. 1991).[7]

In the Memorandum Opinion entered in support of the Order Granting in Part and Denying in Part Jefferson County Commission's Motion to Dismiss, "the court finds that plaintiffs have sufficiently alleged that the Commission is a joint employer of the plaintiffs."[8]  While this was true at the pleadings stage of this

---

[6]See the "Standard of Review" section of this Memorandum Opinion for the summary judgment standard of review.

[7]This is the exact standard of review utilized by the court in analyzing Jefferson County Commission's Motion to Dismiss in this case (docs. 36, 41, 42, Order entered 3-3-2005).

[8]The Order and Memorandum Opinion (docs. 41, 42) were entered by Judge Johnson and were subsequently adopted by the undersigned, in an Order dated 3-3-2005, following Jefferson County Commission's Motion for Reconsideration (doc. 55).

case, the court has reached a different conclusion upon analysis of the pleadings and evidence as is required under the standard of review for summary judgment. The court is not bound by a previous ruling made under a different standard of review.

**B.    The definition of "employer" under the FLSA is not identical to the definition of "employer" under Alabama workers compensation law and should not be analyzed in the same way.**

Morgan and Wilson argue that because the Jefferson County Commission admitted to being the employer of a Deputy Sheriff in a workers compensation suit that ultimately settled, the Commission cannot now claim that it is not Morgan's and Wilson's joint employer in this FLSA action.  The court is not persuaded by this argument.

The definition of "employer" under workers compensation law in Alabama is:

> Every person who employs another to perform a service for hire and pays wages directly to the person. The term shall include a service company for a self-insurer or any person, corporation, copartnership, or association, or group thereof, and shall, if the employer is insured, include his or her insurer, the insurer being entitled to the employer's rights, immunities, and remedies under this chapter, as far as applicable. The inclusion of an employer's insurer within the term shall not provide the insurer with immunity from liability to an injured employee, or his or her dependent in the case of death to whom the insurer would otherwise be subject to liability under Section 25-5-11. Notwithstanding the provisions of this chapter, in no event shall a common carrier by motor vehicle operating pursuant to a certificate of public convenience and necessity be deemed the "employer" of a leased-operator or owner-operator of a motor vehicle or vehicles under

contract to the common carrier.

Ala.Code 1975 § 25-5-1.

The preceding definition is sharply different in its language than the

definition of employer found in the FLSA.

> "Employer" includes any person acting directly or indirectly in the interest
> of an employer in relation to an employee and includes a public agency, but
> does not include any labor organization (other than when acting as an
> employer) or anyone acting in the capacity of officer or agent of such labor
> organization.

29 U.S.C.A. 203(d).

Morgan and Wilson offer no case law or other evidence to support their

position that the definition of "employer" under the Alabama workers

compensation statute is identical or should be analyzed in the same way as the

definition of "employer" under the FLSA.   In addition, the Court, through its own

investigation, cannot find any legal basis for which these different definitions

should be considered as identical.  The fact that the Jefferson County Commission

claimed to be a Jefferson County Deputy Sheriff's employer in a workers

compensation case is of no consequence to the analysis of whether or not the

Jefferson County Commission is Morgan's and Wilson's employer for the purpose

of an FLSA claim.

**C.** **Whether or not the Jefferson County Commission exerts similar levels of control over all Jefferson County Departments as it does over the Jefferson County Sheriff's Department is irrelevant in determining whether the Commission is Morgan's and Wilson's joint employer for an FLSA claim.**

Morgan and Wilson assert that this court should find that the Jefferson County Commission is their joint employer because it exerts similar levels of control over all Jefferson County departments as it does over the Jefferson County Sheriff's Department.  This argument and the evidence in support of it are irrelevant in this court's determination that the Jefferson County Commission is not the joint employer of Morgan and Wilson under the definition of "employer" provided in the FLSA.

## Conclusion

Morgan and Wilson have failed to establish that the Jefferson County Commission was their joint employer for FLSA purposes under the three factor test articulated in *Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995*)*, and so their FLSA claim cannot survive summary judgment.

For the reasons stated, the court finds that Defendant Jefferson County Commission's Motion for Summary Judgment (doc. 65) is due to be **GRANTED**. A separate Order will be entered.

**DONE** and **ORDERED** this 16th day of September, 2005.


**VIRGINIA EMERSON HOPKINS**
United States District Judge